IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| DEBRA CORNELIUS, | ) |
| Plaintiff, | ) 2:21-cv-106 |
| v. | ) |
| PNC BANK, N.A, | ) |
| Defendant/Third-Party Plaintiff, | ) |
| v. | ) |
| DOLLAR BANK, FSB, | ) |
| Third-Party Defendant | ) |

## MEMORANDUM ORDER

Plaintiff Debra Cornelius alleges that she is entitled to a recredit of $100,000 plus interest to her bank account held with Defendant PNC Bank, N.A. She alleges that the $100,000 check that she intended to be paid to Bright Investments, LLC was cashed instead by Mark McMahon and not properly payable by PNC. PNC doesn't agree with Ms. Cornelius's version of events. But even if she's correct, PNC argues that Dollar Bank is the one liable. Dollar Bank was the depository bank (*i.e.*, the bank where the check was deposited by Mr. McMahon, and then later presented by Dollar Bank to PNC for payment). PNC argues that "the presentment warranties set forth in the [Pennsylvania Uniform Commercial Code] make [Dollar Bank, FSB] ultimately liable for this loss as it was in the best position to have prevented [it]." ECF 43, p. 2. As a result, PNC is asserting "a breach of warranty claim against Dollar Bank, in addition to a common law indemnity and contribution claim." *Id.* at p. 1.

After answering PNC's third-party complaint, Dollar Bank now moves for judgment on the pleadings on all of PNC's claims. ECF 31. Dollar Bank argues that PNC has to allege a cognizable claim for breach of the presentment warranty. ECF

32, p. 2.  It also argues that PNC's common-law claims for indemnity and contribution are preempted because "the UCC specifically allocates the risk of loss for the negotiation of allegedly unauthorized checks[.]" *Id.*  After careful consideration, the Court will deny Dollar Bank's motion as to PNC's presentment-warranty claim but grant it as to PNC's common-law claims.

**A.     PNC's presentment-warranty claim is properly pled.**

Articles 3 and 4 of the Pennsylvania UCC include certain presentment warranties made by a depository bank, like Dollar Bank, every time a check is presented for payment.  13 Pa. C.S. § 3417(a)(1); 13 Pa. C.S. § 4208(a)(1).  Those warranties include that: (1) the depository bank was "entitled to enforce the draft or authorized to obtain payment or acceptance of the draft"; and (2) the depository bank had "no knowledge that the signature of the purported drawer of the draft is unauthorized."  *Id.*  The pleadings in this case, construed in the light most favorable to PNC, adequately support PNC's claim that Dollar Bank breached these warranties.

The first warranty is, in effect, a guarantee "that there are no unauthorized or missing indorsements."  *Nisenzon v. Morgan Stanley DW, Inc.*, 546 F. Supp. 2d 213, 225 (E.D. Pa. Mar. 13, 2008) (citation omitted).  Here, Ms. Cornelius has alleged that the series of numbers written above the indorsement line of the subject check constitute an unauthorized indorsement.[1]  ECF 1-1, ¶¶ 17-18.  Dollar Bank has claimed that Mr. McMahon was the person who indorsed this check for deposit.  ECF 26, ¶ 13.  Ms. Cornelius has also alleged that Mr. McMahon was not authorized to indorse the check.  ECF 1-1, ¶ 18.  Piecing these pleadings together, PNC has alleged that Dollar Bank improperly guaranteed that there was no "unauthorized" indorsement on the check.

---

[1] PNC has restated Ms. Cornelius's key allegations in its pleading.  ECF 18, ¶¶ 8-14.

The pleadings also plausibly support the position that Dollar Bank had knowledge that the signature was unauthorized for at least three reasons. First, the check was not made payable to the specific entity that sought to deposit the check. ECF 26, Exs. A and B. As pictured below, the check was made out to "Bright" but was deposited into an account held by "Bright Consulting, LLC":



*Id.* Second, Ms. Cornelius specified in the memo line of the check that its purpose was to be used for a "money market" account. But Bright Consulting's name and the description of that entity's business as a "professional service provider" in Dollar Bank's internal records suggests that Bright Consulting was not an investment provider. *Id.* at Ex. B. Third, Bright Consulting's account was opened ten days **after** the check was issued and that the check was the first and only deposit into that bank account. *Id.* at Exs. B and C. Based on these facts, it is plausible that Dollar Bank had knowledge that Ms. Cornelius did not authorize the subject payment to Bright Consulting and therefore Dollar Bank's presentment of the subject check breached the presentment warranties in Articles 3 and 4.

Dollar Bank disagrees with these conclusions. It argues that "the factual allegations necessary to establish a breach of a presentment warranty do not exist in this case." ECF 32, p. 6. That's because Dollar Bank allegedly "took the check in good faith" and did not have "actual knowledge that the indorsement on the check was allegedly unauthorized." *Id.* at pp.6-7. But this argument is fighting against the

factual allegations (and the reasonable inferences that can be drawn from them) that are in the pleadings, as described above. At this stage, the Court is constrained to construe the pleadings in the light most favorable to PNC. Any factual disputes are best developed in discovery and resolved at summary judgment or trial.[2]

**B.    PNC's common-law claims for indemnity and contribution are preempted by Articles 3 and 4 of Pennsylvania's UCC.**

Dollar Bank next argues that the "rights, obligations, and remedies set forth in Articles 3 and 4 of the UCC displace any claims [PNC] may assert against Dollar Bank grounded in common law principles[.]" ECF 32, p. 9. That's because "these Articles set forth a comprehensive scheme for allocating the risk of loss between a payor bank and depository bank in the event of an unauthorized signature." *Id.* On this score, the Court agrees.

Generally, "the maintenance of a claim based on a violation of the UCC does not preclude a plaintiff from also asserting common law claims." *Toll v. Toll*, No. 14-7032, 2015 WL 4064782, at *3 (D.N.J. July 2, 2015) (citations omitted). However, where the UCC "provide[s] a comprehensive remedy for the parties to a transaction,

---

[2] Dollar Bank also argues that it has "complete defenses to any breach of a presentment warranty." ECF 32, p. 7 (citing 13 Pa. C.S. §§ 3417(c) and 4208(c)). Dollar Bank believes that "a check made payable to 'Bright' allegedly intended to be payable to 'Bright Investing, LLC' and deposited in the account of 'Bright Consulting, LLC' is sufficiently similar for purposes of finding the indorsement was made in favor of the payee and Dollar Bank was authorized to accept the check for deposit." *Id.* at p. 8. But here, Ms. Cornelius alleges that check was unauthorized not only because it was deposited into an account held by a non-matching entity, but also because either Mr. McMahon "or some other as-yet unidentified person" improperly endorsed the check by writing "a series of numbers" on the back. ECF 1-1, ¶ 12. This and the other factual disputes about the check outlined above require more development before the Court can rule on Dollar Bank's defense. Indeed, neither case cited by Dollar Bank was decided at such an early stage of the case. *See* ECF 32, p. 7-8 (citing *Lusitania Savings Bank, FSB v. Progressive Cas. Ins. Co.*, No. 04-3503, 2005 WL 1586618 (3d Cir. July 5, 2005) (non-precedential decision on appeal of summary judgment); *Unlimited Adjusting Grp., Inc. v. Wells Fargo Bank, N.A.*, 174 Cal.App.4th 883 (Cal. Ct. App. 2009) (appeal of judgment entered on special jury verdict)). This decision is without prejudice to Dollar Bank raising this argument again later.

a common-law action will be barred." *N.J. Bank, N.A. v. Bradford Sec. Operations*, 690 F.2d 339, 346 (3d Cir. 1982). When the UCC provides a comprehensive scheme for enforcement of rights and allocation of losses, "reliance on the common law would thwart the purposes of the [UCC]." *Mackin Eng'g Co. v. Am. Exp. Co.*, No. 10-cv-1041, 2010 WL 9013002, at *4 (W.D. Pa. Oct. 12, 2010) (Schwab, J.) (cleaned up). These purposes "include simplifying and clarifying the law governing commercial transactions, fostering the expansion of commercial practices, and standardizing the laws of various jurisdictions." *N.J. Bank*, 690 F.2d at 345.

"Article 3 of the UCC regulates negotiable instruments, including checks." *Siemens Bldg. Techs., Inc. v. PNC Fin. Servs. Grp. Inc.*, 226 F. App'x 192, 199 (3d Cir. 2007) (Ambro, J., concurring). It "apportions liability among drawers, drawees, indorsers, and collecting banks when the check collection process goes awry." *Id.* "Article 4 defines the rights between the parties with respect to bank deposits and collections involving banks located in Pennsylvania." *Bucci v. Wachovia Bank, N.A.*, 591 F. Supp. 2d 773, 779 (E.D. Pa. 2008).

Taken together, these two statutory provisions set forth a comprehensive scheme on the relative rights, risks, and remedies for a depositary bank vis-à-vis a payor bank under the circumstances alleged in this case. That is, they set forth the consequences of breaching the presentment warranties (13 Pa. C.S. §§ 3417(b) and 4208(b)), the defenses available to the depository bank (13 Pa. C.S. §§ 3417(c) and 4208(c)), and the timing for when an action must be brought (13 Pa C.S. §§ 3417(e)-(f) and 4208(e)-(f)). PNC's common-law claims for indemnity and contribution, which seek to apportion risks among those liable for loss, add nothing that isn't already expressly provided for in UCC Articles 3 and 4. *See Bucci*, 591 F. Supp. 2d at 780 ("Permitting a parallel common law conversion claim where recovery is specifically provided for by the Code would render the Code meaningless."). As a result, they are preempted.

\* \* \*

For these reasons, this **11th day of February, 2022,** it is hereby **ORDERED** that Dollar Bank's motion for judgment on the pleadings (ECF 31) is **GRANTED in part** and **DENIED in part.**  The Court enters judgment in Dollar Bank's favor only as to Count II of PNC's third-party complaint.  The Court denies the motion in all other respects.

BY THE COURT:

/s/ J. Nicholas Ranjan
United States District Judge
